UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  09-20971-CIV-ALTONAGA/Brown

**IVAN LLADO-CARRENO**

    Plaintiff,

vs.

**GUIDANT CORPORATION**,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendants, Guidant Corporation,[1] Cardiac Pacemakers, Inc., and Guidant Sales Corporation's[2] (hereinafter "Defendants[']") Motion to Dismiss (the "Motion") [ECF No. 20], filed on January 12, 2011.  In his Complaint, Plaintiff, Ivan Llado-Carreno ("Llado-Carreno"), asserts five claims for relief arising out of the implantation of a defibrilator.  Those claims are (1) negligence, (2) strict liability, (3) breach of implied warranty of fitness for specific purpose, (4) breach of implied and express warranties, and (5) violation of Florida's Deceptive & Unfair Trade Practices Act ("FDUTPA").  (*See generally* Compl. ¶¶ 20–62 [ECF No. 1]).  The Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all of Llado-Carreno's claims for failing to state a claim upon which relief may be granted.  (*See* Mot. 1).  The Court has carefully reviewed the parties' submissions and the applicable law.

---

[1] Guidant Corporation has changed its name to Guidant LLC ("Guidant").  (*See* Mot. 1 n.2).

[2] Guidant Sales Corporation has changed its name to Guidant Sales LLC.  (*See id.* n.3).

Case No. 09-20971-CIV-ALTONAGA/Brown

## I.  FACTUAL BACKGROUND[3]

Around March 9, 2006, a CONTAK RENEWAL 3 HE Cardiac Resynchronization Therapy Defibrillator ("CRT-D") device, Model H177, serial number 284493 ("H177") was surgically implanted in Plaintiff, Ivan Llado-Carreno's ("Llado-Carreno['s]") body ("Plaintiff's H177"). (*See* Compl. ¶ 19). Llado-Carreno alleges that as a result, he "suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earning, loss of the ability to earn money and aggravation of previously existing condition."[4] (Compl. ¶¶ 29, 42, 47, 51 (repeating the same injury language at the end of each claim)).

In his Complaint, Plaintiff lists 12 implantable cardioverter defibrilators and CRT-Ds (collectively, the "Devices")[5] manufactured and distributed by Defendants, including the H177 model. (*See id*. ¶ 8). Plaintiff discusses problems with nine of those devices. With respect to the H177s Llado-Carreno alleges:

> a magnetic switch in these devices may be come [sic] stuck in the closed position, which can inhibit the device's ability to treat ventricular or atrial tachyarrymias [sic]

---

[3] Before summarizing Plaintiff's allegations, the Court observes as a general matter that Plaintiff's Complaint is composed almost entirely of highly formulaic legal conclusions and background information on implantable defibrilators. The Complaint contains almost no factual material relevant to Plaintiff's claims. The oversupply of extraneous information and the omission of key factual details make it difficult to identify and cohesively present the allegations of the Complaint. The Court has made an effort to prune the Complaint down to the "nub" of its essential factual allegations to determine if it states any claim upon which relief may be granted. *Cf. Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950–51 (2009) ("We begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth.").

[4] In his Response, Llado-Carreno states he has provided notice of his claims "by specifically identifying the device implanted in Plaintiff[,] . . . when it was recalled[,] and that he has been damaged." (Resp. 9 [ECF No. 21]).

[5] The Devices are surgically implanted in the body to shock or pace the heart into a normal rhythm should the patient suffer a rapid, life-threatening heart rhythm disturbance that may otherwise result in cardiac arrest. (*See* Compl. ¶ 16).

2

>   (abnormally fast heart rhythms) and also accelerates battery depletion. There are approximately 46,000 of these devices in the United State. [sic] The defect may be detected by medical evaluation of the device.

(*Id*. ¶ 12). Plaintiff alleges that as a result of this defect, the H177 was recalled on June 24, 2005 (*see id*.), and adds that he "had no knowledge [about the reported problems and failures of the Devices] or reason to acquire such knowledge prior to May 23, 2005" (*id*. ¶ 14).[6] According to Llado-Carreno, "Guidant knew and/or had reason to know that the Defective Devices were not safe for the patients for whom they were prescribed and implanted" (*id*. ¶ 17) because of a "defective design and manufacture . . . [that] can cause serious physical trauma, injury and/or death" (*id*. ¶ 18). This, Plaintiff contends, "prevent[ed him] and health care providers,[7] from making informed choices about the implantation." (*Id*.).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S.

---

[6] The careful reader will note that both of these events occurred before Llado-Carreno received his H177 implant in March 2006.

[7] At several points in the Complaint, its sounds as if Plaintiff is bringing a class action, but the Complaint is not styled as a class action, nor does it make any specific reference to a class.

Case No. 09-20971-CIV-ALTONAGA/Brown

at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). But pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950; *see also Sinaltrainal*, 578 F.3d at 1260 ("'[U]nwarranted deductions of fact' in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.").

### III. ANALYSIS

Defendants make three arguments in support of their Motion: (1) all five of Llado-Carreno's claims are preempted by federal law, (2) Llado-Carreno does not allege enough facts to properly state any of his five claims, and (3) Llado-Carreno does not allege his FDUTPA claim with the heightened particularity required by Federal Rule of Civil Procedure 9(b). (*See* Mem. of Law 1 [ ECF No. 17]). The Court only addresses the second and third arguments because the allegations in the Complaint are not clear and specific enough to determine if Llado-Carreno's claims are preempted by federal law.[8]

---

[8] If Plaintiff should file an amended complaint, he is cautioned to take into account the Supreme Court's doctrine of federal preemption in Class III medical device cases as expressed in *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 327 (2008).

Case No. 09-20971-CIV-ALTONAGA/Brown

### A. Count I: Negligence

There are four elements to a negligence claim:

1. A duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

2. A failure on the [defendant's] part to conform to the standard required: a breach of the duty . . . .

3. A reasonably close causal connection between the conduct and the resulting injury. This is what is commonly known as "legal cause," or "proximate cause," and which includes the notion of cause in fact.

4. Actual loss or damage . . . .

*Clay Elec. Co-Op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 30, at 164–65 (5th ed. 1984)) (alterations in original).

Llado-Carreno's negligence claim provides an impressive list of at least nine distinct duties that Guidant owed to him. (*See* Compl. ¶ 23). According to Plaintiff, Guidant had the duty to use reasonable care in the design, manufacture, inspection, testing, monitoring, distributing, selling, and labeling of its products, as well as to warn of hazards associated with using the device. (*See id.*). To establish Guidant's breach of these duties, Llado-Carreno simply repeats the list of duties with the words "failing to" pre-fixed to each of them. (*Id.* ¶ 24). For instance, Llado-Carreno alleges "Defendant . . . breached its duties owed to Plaintiff [by] . . . failing to used [sic] reasonable care in designing, manufacturing, testing, monitoring, distributing and selling of Plaintiff's [H177]." (*Id.*). These breach allegations are "legal conclusion[s] couched as a factual allegation[s]," *Iqbal*, 129 S. Ct. at 1950, and "are not entitled to the assumption of truth," *id.*

Moreover, without some specific factual allegations describing what particular conduct by Guidant ultimately caused Llado-Carreno to "suffer[] bodily injury" (Compl. ¶ 29), the Court cannot determine if Guidant's actions proximately caused the harms[9] Llado-Carreno alleges. Indeed, the Court has struggled to make any sense at all of Llado-Carreno's Complaint. After reading it several times and considering his Response to the Motion, the Court still has no idea what is wrong with Llado-Carreno's H177. As currently drafted, the Complaint contains the following disjointed facts: (1) early production models of the H177 had a problem with a magnetic switch, (2) Plaintiff could not have been aware of this problem until nine months *before* he had his H177 installed, (3) as a result Plaintiff suffered bodily injury. Completely absent from the Complaint is any allegation that Plaintiff's H177 has the magnetic switch problem, or that the device has failed or malfunctioned in any way. The Complaint also does not specifically describe any unreasonable conduct undertaken by Guidant. The Complaint amounts to what the Supreme Court described as "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 129 S. Ct. at 1950, and does not state a plausible claim for negligence.

**B. Strict Liability**

Florida has adopted the Restatement approach to strict products liability. The Florida Supreme Court has held:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and

---

[9] The injuries that Llado-Carreno alleges are also vague and lack supporting factual allegations. He does not explain what type of bodily injury he suffered, how long he was in the hospital, what previous condition was re-aggravated, or why he was unable to work. (*See, e.g.*, ¶¶ 29, 42).

>    (b) it is expected to and does reach the user or consumer without substantial
>    change in the condition in which it is sold.

*West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d 80, 84 (Fla. 1976) (citing RESTATEMENT (SECOND) OF TORTS § 402 A)).  Llado-Carreno has not alleged any defect in his H177 or explained why it is unreasonably dangerous.  He has also not explained what physical harm his H177 has caused him.  Consequently, he has not stated a plausible claim for strict liability.

### C. Count III: Implied Warranty of Fitness for a Particular Purpose

Florida has adopted the Uniform Commercial Code, which provides for an implied warranty of fitness for a particular purpose in certain circumstances.  Florida law provides, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose."  FLA. STAT. § 672.315.  According to the Complaint, "Defendant warranted that the Plaintiff's [H177] . . . was fit for the purpose for which it was used"  (Compl ¶ 43), and "Defendant breached the warranty that the Plaintiff's [H177] . . . was fit for the purpose for which it was used" (*id*. ¶ 46).  Here again, Llado-Carreno has simply stated a legal conclusion as a factual allegation.  Absent some specific factual explanation of how Llado-Carreno's H177 failed to perform as warranted, Plaintiff's conclusory allegation that "Defendant breached the warranty" does not state a claim under section 672.315.

### D. Count IV: Express and Implied Warranties

Similarly, Florida Statute sections 672.313–14 provide for several types of express warranties and for an implied warranty of merchantability.  The Court need not begin by citing lengthy excerpts from the statute because, as before, Plaintiff alleges no facts to support his conclusory allegation that,

"Contrary to the Defendant[s'] implied warranty, Plaintiff's [H177] was neither of merchantable quality nor safe and fit for its intended use and purpose. Plaintiff's [H177] was and is unreasonably dangerous and unfit for the ordinary purpose for which it was prescribed." (Compl. ¶ 50).

Llado-Carreno does not state a claim for breach of express warranty[10] because he neither alleges any express written or oral statements made by Guidant about the performance or operation of his H177, nor any deviation in the operation of his H177 from what was promised in any such statements. (*See* FLA. STAT. § 672.313(a)). Also, Llado-Carreno does not claim that his H177 does not conform to the device he may have been shown or told before the surgery would be implanted in him. (*See id*. § 672.313(b)–(c)).

Moreover, Llado-Carreno does not state a claim for breach of implied warranty of merchantability based on any of the grounds listed in the statute. (*See id*. § 672.314(a)–(f)). In particular, he has neither alleged any specific facts that would suggest his H177 has not served its ordinary purpose (*see id*. § 672.314(c)), nor has he alleged that it did not conform to the container or label that was provided with the product (*see id*. § 672.314(f)). Therefore, the Complaint does not adequately allege a claim for breach of an express or implied warranty.

**E. Count V: FDUTPA**

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Plaintiff asserts "the particularity requirement [of] Rule 9 is inapplicable to the FDUPTA [sic] claim pursuant to the law of the State of Florida." (Resp. 11). Plaintiff's argument seems to be that because the FDUTPA

---

[10] Although Count IV mentions breach of express warranty in its caption, no breach of an express warranty — not even a conclusory one — is actually alleged in the body of Count IV.

Case No. 09-20971-CIV-ALTONAGA/Brown

creates liability for deceptive and unfair trade practices — categories which encompass but are not limited to fraud — "[a] finding of fraud is not necessary to sustain a violation under the [F]DUTPA." (Resp. 10 (citing *W.S. Badcock Corp. v. Myers*, 696 So. 2d 776, 779 (Fla. 1st DCA 1996)). From a strictly logical point of view this may be true, but Llado-Carreno appears[11] to be alleging that Guidant committed fraud by "deceptively and unlawfully induc[ing him] to purchase and/or have [the H177] implanted in his body." (Compl. ¶ 53).

The particularity requirement of Rule 9(b) applies to all claims that sound in fraud, regardless of whether those claims are grounded in state or federal law. *See Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) ("Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b)."); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) ("Where, as here, the averments in the complaint necessarily describe fraudulent conduct, Rule 9(b) applies to those averments."). Llado-Carreno's general allegation that "Guidant's actions are deceptive and in clear violation of FDUTPA" (Compl. ¶ 52) is not supported by any specific facts, and as a consequence, Llado-Carreno does not satisfy the heightened pleading requirement required by Federal Rule of Civil Procedure 9(b). The FDUTPA claim must therefore be dismissed.

---

[11] As with Plaintiff's other claims, the allegations in the FDUTPA count are almost entirely legal conclusions with no factual elaboration. Consequently, even if the regular pleading standard required by Federal Rule of Procedure 8(a) applied, Llado-Carreno would not have adequately pleaded a claim under the FDUTPA.

9

Case No. 09-20971-CIV-ALTONAGA/Brown

## IV.  CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. The Motion **[ECF No. 20]** is **GRANTED**.

2. The Complaint is **DISMISSED without prejudice**.

3. Plaintiff, Ivan Llado-Carreno, may file an amended complaint **no later than March 4, 2011**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of February, 2011.

*Cecilia M. Altonaga*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record